# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United Federal Credit Union,

                Plaintiff,

v.

Wolters Kluwer Financial Services, Inc.,

                Defendant.

Civ. No. 16-3349 (RHK/LIB)
**MEMORANDUM OPINION AND ORDER**

Brandon J. Wilson, Stephen Paul Dunn, Howard & Howard Attorneys, PLLC, Royal Oak, Missouri, Brent A. Lorentz, Winthrop & Weinstine PA, Minneapolis, Minnesota, for Plaintiff.

Kenneth S. Ulrich, Julie F. Stewart, Goldberg Kohn, Ltd., Chicago, Illinois, Judah Druck, R. Christopher Sur, Maslon LLP, Minneapolis, Minnesota, for Defendant.

## INTRODUCTION

Plaintiff United Federal Credit Union ("United") is a Michigan-based bank. Previously, it purchased standardized or "form" account agreements from Defendant Wolters Kluwer Financial Services, Inc. ("Wolters"), which warranted the forms complied with applicable law. After a United customer sued over the forms, it commenced this action, alleging Wolters breached its warranty and seeking a judgment declaring Wolters's liability. Wolters now moves to dismiss United's breach-of-contract claim and stay its declaratory-judgment claim. For the reasons set forth below, the Court will grant the Motion.

## BACKGROUND

The Amended Complaint alleges the following facts, which are taken as true for purposes of the Motion.

As its name suggests, United is a federally chartered credit union. (Am. Compl. ¶ 1.) Wolters "help[s] financial institutions manage their risk . . . by [preparing and] providing form account agreements" that financial institutions use to establish contractual relationships with their customers. (Id. ¶ 8.) On November 1, 2002, United and Wolters entered into a "Deposit Disclosures Program Master Agreement" (the "Master Agreement"), under which Wolters supplied United with form account agreements that United used with its customers. (Id. ¶¶ 9–10.)

The Master Agreement included a Compliance Warranty, in which Wolters warranted that certain "Covered Documents" "complie[d] with all federal and state laws and regulations in effect when the Covered Document [was] produced." (Id. ¶ 11; see also id. Ex. B.)[1] If a Covered Document failed to comply with applicable law—a "Compliance Failure"—Wolters agreed to pay up to $1,000,000 per year of United's "Actual Loss," defined to include "court costs and reasonable attorney fees [United was] required to pay to defend claims against [it]." (Am. Compl. Ex. B.) The Compliance Warranty explained that Wolters

---

[1] The Court pauses to note two points about the Compliance Warranty. First, it is quoted extensively in (and attached to) the Amended Complaint, and thus the Court properly considers it at this stage. See Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); Stahl v. U.S. Dep't of Agric., 327 F.3d 697, 700 (8th Cir. 2003) ("In a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss."). Second, both parties have changed their names since entering into the Compliance Warranty; United appears as First Resource Federal Credit Union, and Wolters appears as Bankers Systems, Inc.

> will not pay simply because [United is] sued and a Covered Document is involved. Litigation is unfortunately commonplace in our society and we will only pay if there is in fact a Compliance Failure. Specifically, [Wolters] will not pay any Compliance Failure claim until [it] is satisfied, based on its own investigation or the final order of a court . . . that a Compliance Failure has occurred and that [United has] suffered Actual Loss in the amount claimed.

(Id.)

On September 21, 2015, Tonya Gunter sued United in the United States District Court for the District of Nevada (the "Nevada Lawsuit"), alleging "that the form share draft account agreement that Wolters had sold to United violates both federal and Nevada state law." (Id. ¶ 17.) United has defended the action and, on October 15, 2015, it tendered a "Notice of Compliance Failure Claim" to Wolters. (Id. ¶¶ 19–20.) United takes issue with Wolters's response. The Amended Complaint alleges that, on December 8, Wolters responded that it had sent the claim to its legal department for review. (Id. ¶ 21.) Months passed with no response from Wolters, and, on March 24, 2016, United inquired. (Id. ¶ 23.) On April 19, an attorney representing Wolters called United. The Amended Complaint provides few details of this conversation, averring only that Wolters's attorney "refused to confirm" the Compliance Warranty covered United's claim. (Id. ¶ 30.) Two months later, an attorney representing United wrote to Wolters demanding that it "confirm its obligation under the [Compliance] Warranty to pay for United's defense of the Nevada Lawsuit." (Id. ¶ 34.) Wolters did not respond. (Id. ¶ 36.) The Nevada Lawsuit remains pending, and United continues to incur defense-related fees and costs.

As a result, United commenced this action on October 4, 2016, seeking a judgment declaring, *inter alia*, that (1) Wolters is obligated to investigate United's claim; (2) the Compliance Warranty covers the form language at issue in the Nevada Lawsuit; and (3) Wolters is obligated to indemnify United for attorneys' fees and costs incurred defending the Nevada Lawsuit "if a Compliance Failure has occurred." (Id. ¶ 44.) On November 10, in a letter to United, Wolters took the position that the Compliance Warranty "does not impose any affirmative obligation on Wolters[] to conduct an investigation to determine whether the underlying [form] agreement violates federal and Nevada law and constitutes a 'Compliance Failure' covered by the [Compliance] Warranty." (Id. Ex. C.)[2] The letter then set forth Wolters's determination that, legality aside, the language at issue in the Nevada Lawsuit was excluded from the Compliance Warranty. (Id.) After receiving this letter, on February 9, 2017, United amended its Complaint to add a breach-of-contract claim. (Doc. No. 35.)

Wolters now moves to dismiss United's breach-of-contract claim and stay its declaratory-judgment claim pending resolution of the Nevada Lawsuit. The Motion has been fully briefed, and the Court heard argument on May 8, 2017; the Motion is ripe for disposition.

---

[2] Like the Compliance Warranty, this letter is referenced in and attached to the Amended Complaint, and thus is properly considered by the Court.

**ANALYSIS**

**I. Breach of contract**

United alleges that Wolters breached the Compliance Warranty and the implied covenant of good faith and fair dealing by failing to acknowledge and investigate its assertion that a Compliance Failure had occurred. (See Mem. in Opp'n 8–14.) Wolters responds that United has failed to state a plausible claim,[3] as the Amended Complaint demonstrates that it did "acknowledge" United's claim, and no provision of the Compliance Warranty affirmatively required it to investigate. The Court agrees.

Under Minnesota law,[4] the interpretation of a contract begins with its plain language. Hartford Fire Ins. Co. v. Clark, 562 F.3d 943, 946 (8th Cir. 2009). If a contract is unambiguous, the Court must apply the ordinary meaning of its terms. MSK EyEs Ltd. v. Wells Fargo Bank, Nat'l Ass'n, 546 F.3d 533, 541 (8th Cir. 2008). A claim unsupported by the terms of a contract is properly dismissed. Neubauer v. FedEx Corp., 849 F.3d 400, 405 (8th Cir. 2017); Gorog v. Best Buy Co., 760 F.3d 787, 793–94 (8th Cir. 2014).

Here, neither party argues the Compliance Warranty is ambiguous, and the Court

---

[3] A complaint will survive a motion to dismiss only if it includes "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007). A "formulaic recitation of the elements of a cause of action" will not suffice. Id. at 555; accord Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Instead, the plaintiff must set forth sufficient facts in the complaint to "nudge[] the[] claim[] across the line from conceivable to plausible." Twombly, 550 U.S. at 570. In reviewing a motion to dismiss, the Court "must accept a plaintiff's specific factual allegations as true but [need] not . . . accept . . . legal conclusions." Brown v. Medtronic, Inc., 628 F.3d 451, 459 (8th Cir. 2010) (citing Twombly, 550 U.S. at 556).

[4] The Compliance Warranty provides that Minnesota law controls. (Am. Compl. Ex. B.)

agrees.[5] And, it is clear that the Compliance Warranty contains no provision expressly requiring Wolters to "acknowledge" a claim. Even if it did, the Amended Complaint alleges that "Wolters represented to United that [it had] sent the [claim] to [its] legal department for appropriate action" less than two months after receiving it. (Am. Compl. ¶ 21.) United has not explained—and it is difficult for the Court to perceive—how this constitutes something other than an "acknowledgement."

As for Wolters's purported obligation to investigate, the Compliance Warranty provides that Wolters will not pay until it "is satisfied, based on its own investigation *or the final order of a court* . . ., that a Compliance Failure has occurred and that [United has] suffered Actual Loss in the amount claimed." (Id. Ex. B (emphasis added).) This places no affirmative duty upon Wolters to commence an investigation or complete one within a certain period, particularly where the issue of a Compliance Failure is subject to ongoing litigation. Indeed, Wolters explained in its November 10 letter to United that it "does not generally provide decisions regarding the scope of potential coverage prior to the conclusion of the underlying suit." (Id. Ex. C.) This is hardly an unreasonable position—the Compliance Warranty expressly provides that Wolters "will not pay simply because [United is] sued and a Covered Document is involved." (Id. Ex. B.)

United cobbles together several provisions of the Compliance Warranty in an attempt to foist an investigation duty upon Wolters; it points out that Wolters (1) warranted that its forms complied with applicable law, (2) agreed to monitor changes

---

[5] Whether policy language is ambiguous is a question of law for the Court. Babinski v. Am. Family Ins. Grp., 569 F.3d 349, 351 (8th Cir. 2009) (citing Carlson v. Allstate Ins. Co., 749 N.W.2d 41, 45 (Minn. 2008)).

in applicable law, and (3) required United to cooperate in any claim investigation. (See Mem. in Opp'n 9–10.) But these provisions simply do not aid United's cause, as none *requires* Wolters to investigate. Accordingly, the Court will dismiss United's breach-of-contract claim.

United next argues that Wolters also violated the implied covenant of good faith and fair dealing. Such a covenant is implied into every contract and "prohibits a party from failing to perform for the purpose of thwarting the other party's rights." Cox v. Mortg. Elec. Registration Sys., Inc., 685 F.3d 663, 671 (8th Cir. 2012) (quoting Team Nursing Servs., Inc. v. Evangelical Lutheran Good Samaritan Soc'y, 433 F.3d 637, 641–42 (8th Cir. 2006)). However, a party cannot invoke the covenant to create duties beyond the scope of the underlying contract. Watkins Inc. v. Chilkoot Distrib., Inc., 719 F.3d 987, 994 (8th Cir. 2013) (citing Teng Moua v. Jani–King of Minn., Inc., 810 F. Supp. 2d 882, 893 (D. Minn. 2011) (Montgomery, J.)). That is precisely what United attempts to accomplish here. (See, e.g., Mem. in Opp'n 13 ("[E]ven if it is determined that the [Compliance] Warranty . . . do[es] not affirmatively require Wolters to investigate . . ., *by refusing to investigate*, Wolters is improperly depriving United of the benefit of th[e] agreement[].") (emphasis added).) As discussed above, Wolters has no obligation to investigate. A different result might obtain if Wolters had simply *ignored* a warranty claim *not* subject to ongoing litigation, but United's own allegations show that is not the case here. Accordingly, the Court will also dismiss United's claim for breach of the implied covenant of good faith and fair dealing.

## II. Declaratory judgment

United next seeks a judgment declaring, *inter alia*, that the purportedly unlawful language at issue in the Nevada Lawsuit is covered by the Compliance Warranty, and that Wolters is obligated to pay its attorneys' fees and costs incurred to date defending the Nevada Lawsuit "if a Compliance Failure has occurred." (Am. Compl. ¶ 44.) Wolters moves to stay this claim, arguing the issues it raises should not be decided while the Nevada Lawsuit is pending. The Court agrees.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936); accord Sierra Club v. U.S. Army Corps of Engineers, 446 F.3d 808, 816 (8th Cir. 2006). In deciding a motion to stay, courts consider both "the hardship that will be suffered by" the litigants and "the most efficient utilization of [their] judicial resources." Kemin Indus., Inc. v. Watkins Prod., Inc., No. 1-74 Civ. 129, 1974 WL 20194, at *1 (D. Minn. July 8, 1974) (Lord, J.). Further, "[t]here can be no doubt that two judicial forums considering the same problem is wasteful." Id.

Here, United has plainly asked the Court to decide the same issue under consideration in the Nevada Lawsuit—whether a Compliance Failure has occurred. Indeed, it asks the Court to declare that "Wolters is obligated to indemnify [it] . . . *if a Compliance Failure has occurred*." (Am. Compl. ¶ 44(e) (emphasis added).) The only way the Court could grant this relief (*i.e.*, declare that Wolters is obligated to indemnify United) is by concluding that the forms at issue in the Nevada Lawsuit are somehow

unlawful, and that the unlawful language is in fact covered by the Compliance Warranty. The former would duplicate the Nevada Lawsuit, risking inconsistent conclusions and squandering this Court's resources.

United contends that a stay is improper in light of Wolters's position that, legality aside, the form language at issue in the Nevada Lawsuit is excluded from the Compliance Warranty. However, with the very real possibility of a determination in the Nevada Lawsuit that United's forms are lawful, the Court declines to adjudicate whether Wolters's position is correct. Rather, prudence and economy of judicial resources dictate that United's declaratory-judgment claim should be stayed pending resolution of the Nevada Lawsuit.

United argues it will be harmed by a stay because it is "incurring significant expenses defending the Nevada Lawsuit." (Mem. in Opp'n 22.) Ultimately, this lays bare the fundamental problem with United's theory: at oral argument, United's counsel insisted that it had purchased "insurance" imposing upon Wolters a duty to defend it in the Nevada Lawsuit. This is simply incorrect. Wolters is not an insurance company, and United did not purchase insurance; it purchased *reimbursement*. A duty to defend may arise by contract, e.g., Bethel v. Darwin Select Ins. Co., 735 F.3d 1035, 1039 (8th Cir. 2013), and United was free to bargain for such a provision here, but no such provision appears in the Compliance Warranty. In fact, the Compliance Warranty forecloses such an obligation, expressly providing that Wolters "will not pay simply because [United is] sued and a Covered Document is involved." (Am. Compl. Ex. B.) Hence, United has, "in essence, agree[d] to endure . . . litigation" prior to reimbursement. Minnwest Bank,

M.V. v. Chicago Title Ins. Co., Civ. No. 10-817, 2010 WL 4791918, *3 (D. Minn. Sept. 3, 2010) (Noel, M.J.) (adopted, 2010 WL 4791428 (D. Minn. Nov. 18, 2010) (Ericksen, J.)).

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Wolters's Motion (Doc. No. 38) is **GRANTED**, United's breach-of-contract claim (Count II of the Amended Complaint (Doc. No. 35)) is **DISMISSED WITH PREJUDICE**, and all proceedings in connection with its declaratory-judgment claim (Count I) are **STAYED** pending further Order of the Court. The parties shall promptly notify the undersigned once the Nevada Lawsuit is resolved.


Date: June 30, 2017                     s/ Richard H. Kyle
                                        RICHARD H. KYLE
                                        United States District Judge